Martin J. Keenan
Martin J. Keenan, LLC
121 S. Whittier Rd., Suite 420
Wichita, KS 67207
Office: (316) 689-3503
Cell: (620) 793-0347
keenanlawyer@gmail.com

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF KANSAS

| | | |
|---|---|---|
| TAMMY L. SPENCER, | ) | |
| Plaintiff, | ) | |
| | ) | Case. No 6:21-cv-1138 |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| DIVERSICARE OF SEDGWICK, LLC, a foreign | ) | |
| limited liability company, and DIVERSICARE | ) | |
| HEALTHCARESERVICES, INC., | ) | **FIRST AMENDED COMPLAINT** |
| a Delaware corporation, | ) | |
| Defendants. | ) | |
| _____ | ) | |

COMES NOW the Plaintiff, Tammy L. Spencer, by and through her undersigned attorney, Martin J. Keenan of Martin J. Keenan, LLC, and hereby files this Complaint against DIVERSICARE OF SEDGWICK, LLC and DIVERSICARE HEALTHCARE SERVICES, INC., a Delaware corporation, and hereby states and alleges as follows:

## I. NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*, the Kansas Act Against Discrimination (KS Stat. Sec. 44-1109 *et seq.)*, alleging violations of Plaintiff Tammy L. Spencer's constitutional and civil rights. Plaintiff, during her employment with Defendant, was subjected to sexual harassment and a hostile work

environment based upon sex. Plaintiff, an employee of Diversicare of Sedgwick, LLC was the victim of unwanted sexual comments and advances by the Chief Administrator at Diversicare of Sedgwick, LLC, Markus B. Myer.  His actions constituted sexual harassment, hostile work environment and retaliation. Additionally, this is a claim under Title VII for wrongful discharge for whistleblowing, both about the sexual harassment and about safety and patient care violations of law at Defendant's facility.

## II. JURISDICTION AND VENUE

1.      This Court has original jurisdiction in this action pursuant to 28 U.S.C. §1331 and 1343 and 42 USC §2000e-5, inasmuch as the matter in controversy is brought pursuant to Title VII of the Civil Rights Act of 1964 and regulations. The Court has pendent claim jurisdiction under 28 USC §1376 (a).

2.      Venue is appropriate in the District under USC §1391 (b) and (c).  This District possesses venue in this matter pursuant to 42 USC §2000e-(5)(f). The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights guaranteed by federal law, which rights provide for injunctive relief and other relief for illegal employment discrimination. The amount in controversy in this action exceeds the jurisdictional limits of the Court.

3.      Plaintiff complained to her employer about illegal sexual harassment, the hostile work environment based on sex, and retaliation based on her rebuffing sexual advances, and also the retaliation for her bringing to light various violations of the law. Federal law prohibits retaliation against an employee for bringing to light unlawful activity in Title VII 42 USC §2000e-(3)(a). The retaliation claim is also based on 29 USC 215(a)(3) along with OSHA at 29

USC 660(c)(1) and general First Amendment law. Pendent jurisdiction on the retaliation claim exists under 28 USC 1376(a) and 28 USC 1391.

## III. PARTIES

4.      Plaintiff is a resident of Sedgwick County, Kansas, is a female, and was employed by the Defendant as a "Social Worker in charge of Admissions and Discharges and Patient Complaints and Concerns" from August 2018 to February 10, 2020.  Plaintiff worked at Diversicare of Sedgwick, LLC at 712 Monroe, Sedgwick, Kansas from August 12, 2018 to February 10, 2020. At all times relevant, she was a resident of Sedgwick County, Kansas.

5.      At all times pertinent, Plaintiff's employer, Diversicare of Sedgwick, LLC and Diversicare Healthcare Services, Inc. was subject to Title VII of the Civil Rights Act of 1964 (as amended), including any statutes dealing with hostile work environment or sexual harassment.

6.      Diversicare of Sedgwick, LLC, is a foreign limited liability company who can be served with process at Corporation Service Company, 2900 SW Wanamaker Dr., Suite 204, Topeka, KS 66614. Diversicare of Sedgwick, LLC is a sub-entity of the parent company Diversicare Healthcare Services, Inc., a Delaware corporation, with law offices at 1621 Galleria Blvd., Brentwood, TN 37027-2926.

## IV. ADMINISTRATIVE PROCESS

7.      Prior to filing the charge of discrimination with the EEOC Kansas Human Rights Commission dated February 19, 2021, Attorney Keenan filed by facsimile on January 11, 2021 to the EEOC the following EEOC complaint (See Appendix A).  The EEOC corresponded with

Keenan about said complaint several days later (Appendix B).   The Plaintiff filed a Charge of Discrimination with the EEOC Kansas Human Rights Commission dated February 19, 2021, alleging unlawful employment practices, occurring within 300 days or less from the date of filing the charge. On or about February 22, 2021, Plaintiff received a Notice of Right to Sue.

## V.  FACTUAL BACKGROUND

8.      Plaintiff Tammy L. Spencer was hired as "Social Worker in charge of Admissions and Discharges and Patient Complaints and Concerns" at Diversicare of Sedgwick, LLC from August  2018 to February 10, 2020.  She was discriminated against from the first day she began work until her resignation on February 10, 2020, and continued to be discriminated against by Diversicare up and through June of 2020, even though she was no longer employed there.

9.       Plaintiff began working for Diversicare of Sedgwick, LLC in late August, 2018. In April, 2020, she was coerced into signing a waiver of all claims in exchange for getting her pay and benefits to which she was already legally entitled. The waiver was not supported by consideration.

10.     The facility Plaintiff worked for is known as Diversicare of Sedgwick, LLC, and is under the umbrella of Diversicare Healthcare Services, Inc., a Delaware corporation.

11.     Plaintiff received unwanted sexual advances and comments from the  Senior Healthcare Administrator of Diversicare of Sedgwick, LLC beginning in August 2018 when she started work there. His name is Markus B. Meyer.

12.      Meyer made frequent comments about how beautiful Plaintiff was, and frequently touched her on the shoulders or her back in a sexually suggestive manner.

13.     On her birthday on March 28, 2019, Meyer gave Plaintiff an expensive gift bag full of chocolates and various other items. He did not do this for other employees. Plaintiff refused to accept the gift bag. The gift bag contained three gift cards worth $50 each, three boxes of chocolates, two packages of socks for her to use in her daily workouts, and a nice thermos bottle for her to use when she worked out. Meyer knew that Plaintiff worked out at a gym in Wichita daily.

14.     Meyer learned that Plaintiff moved out of her fiance's home in late June, 2019. On July 4, 2019, Meyer then sexually harassed her and insisted that she accompany him to a July 4, 2020 picnic event in Andover, Kansas. She refused to attend the event with him.  He texted her repeatedly on July 4, and said he had a blanket on the grass for her to lie down with him and that he had food prepared for her. She rebuffed his advances.

15.     The sexual harassment continued into August of 2019, when Meyer closed the door to his office at Diversicare of Sedgwick, LLC and pulled Plaintiff toward himself and tried to force her to kiss him. She rebuffed him, pushing against his chest to push him away. She said "No!" loudly and said: "This is so awkward." She then left the office for the day, disgraced and upset. She complained to Justin Harland, a supervisor, about the harassment from Meyer, and Harland said: "Just tell Markus 'no.'" He also told her: "Things will get better. Just wait."

16.     From that date forward, Meyer retaliated against Spencer for failing to respond positively to his sexual advances. (Overnight, he quit calling her "Tammy" and began calling her "Ms. Spencer" for the rest of her employment.) This retaliation and harassment continued through her last day on the job in February 10, 2020, until she was coerced into signing a Waiver

of claims in April of 2020, and continued through June of 2020. Diversicare continued to retaliate against her by delaying giving her W-2 tax forms to her until late May or June, 2020.

17.     The retaliation included: berating and embarrassing Plaintiff in front of other employees and managers, giving Plaintiff unpleasant work duties that were outside the scope of her social work assignments, such as painting rooms in the facility, and moving patient beds. Other work duties, which had nothing to do with her job description, included, but were not limited to: cooking, doing the makeup and hair of residents, driving patients to and from doctors appointments, and organizing Halloween activities for the facility.

18.     When a dispute broke out between two men at the facility, Plaintiff was asked to break up their argument and make peace. When two residents referred to an African-American worker as "nigger," she was asked to meet with the couple and have them sign a contract that they would not use the word "nigger" in the future. Meyer made Plaintiff tell an employee that she had body odor and would be discharged unless it was resolved.

19.     The hostility towards Plaintiff continued on other issues related to work. Plaintiff, Justin Harland, the Director of Rehabilitation, and Becky Hemberger, the Director of Nursing, became appalled at unsafe and illegal violations which endangered patients at the facility.

20.     Meyer planned a retreat for the managers at his home in Wichita, KS on October 29, 2019. All employees were asked to give suggestions as to how the facility could be improved.  There were about a dozen present at the retreat. Plaintiff brought to the attention of all present that the maintenance man employed by Diversicare of Sedgwick, LLC, James, left tools, exposed wires, and sharp objects and even an unfinished plumbing job in a patient's room, which posed a danger.   When Plaintiff mentioned that Diversicare needed to fix these dangerous

conditions, Meyer snapped and shouted at Plaintiff in front of the entire group: "Go pack up your shit and get out of the office!"  She was fired.

21.    Other employees at the retreat were appalled at this savage treatment of Plaintiff. Plaintiff refused to leave the meeting and reported for work as usual and was allowed to work.

22.    At the retreat at Meyer's house, Plaintiff was informed that her new supervisor would be Justin Harland, the Director of Rehabilitation.

23.    Both Plaintiff and Hemberger brought unlawful and unsafe working conditions to the attention of Meyer.  Among the things Plaintiff mentioned were drills, tools and plumbing equipment being left out, clogged toilets and drains, often with dangerous plumbing equipment left out in patients' bathrooms, medication errors, water spills, etc. She told Meyer that the maintenance man, James, had shown up at work with alcohol on his breath. The Fire Marshall had noted 27 deficiencies against the facility.

24.    Plaintiff asked to be transferred to the corporate facility at Diversicare of Sedgwick, LLC and was turned down unjustifiably.

25.    On November 7, 2019 the Director of Nursing, Becky Hemberger resigned because she had previously been a state surveyor for nursing homes, and she didn't want to work at a place with so many legal violations.

26.    In one humiliating incident, a meeting was held and Meyer asked the leadership for ideas and suggestions. If the suggestion was a good suggestion, he would slide a certain number of quarters to the person giving the suggestion as a reward. For instance, a good suggestion might get two quarters, and a great suggestion would result in Meyer sliding four quarters in the direction of the employee. When Plaintiff made suggestions, Meyer pointedly slid

one penny in Plaintiff's direction. She made three or four suggestions, and each time he slid a penny to her, 1/25 of the value of the minimum amount the others received.

27.     Plaintiff was humiliated and confronted Meyer the next day. He told her: "I am from Austria. In Austria to give someone a penny is considered a great honor. I was complimenting you more than the others." The problem is this happened in the U.S. where no one knew about this alleged Austrian custom.

28.     A patient's family was unhappy because the new Director of Nursing, Kim Flock, would not call them back.  Because part of Plaintiff's job description was dealing with patient complaints, Plaintiff met with the wife of the patient. The wife was angry about medication errors made on her husband, who had dementia.  The wife had gone to Plaintiff's office. The wife complained that medications were left dropped on the floor. Plaintiff tried to help them, which enraged Kim Flock, the Director of Nursing. Kim Flock told Plaintiff in an angry fashion: "You are in big trouble." She was rebuked for trying to help a patient with medication errors. She was routinely told not to write down deficiencies at the facility.

29.     When the leadership from the home office in Brentwood, TN visited the facility in Sedgwick after Becky Hemberger, the Director of Nursing, was gone, Meyer came to Plaintiff's office prior to the meeting with the corporate group and warned Plaintiff: "Don't say anything. Keep your mouth shut."  When the authorities from the home office visited the facility at Sedgwick, Kansas, Plaintiff began to weep quietly during one of the meetings, as she had been ordered to shut up. The Director of Nursing for the entire company, Robin, pulled Plaintiff aside between meetings and said: "Tammy, do you want to visit with me privately?"  Plaintiff declined for fear of being punished by Meyer and Flock.

30.     Four leaders at Diversicare of Sedgwick, LLC were scheduled to attend the annual convention at the home office in Brentwood, TN on February 12, 2020: Justin Harland, Markus Meyer, Kim Flock and Plaintiff.  Meyer and Flock were determined to ensure that Plaintiff did not go to Tennessee for the trip, for fear that she might reveal illegal activities at the facility. One new deficiency they were concerned she might reveal is that a patient fell off a lift and broke bones, and this was being covered up as a mechanical error rather than human error.

31.     On February 7, 2020, Kim Flock and Markus Meyer retaliated against Plaintiff by suspending her with pay for allegedly abusing patients. These allegations were a lie and were intended to retaliate against her for rebuffing the sexual harassment and for reporting legal deficiencies in the company. The alleged abuses occurred with patients Patricia Hart and Warren Duncan. The suspension was intended to prevent her from attending the convention in Tennessee on February 12, 2020.  When suspended, Plaintiff left the facility on February 7, 2020 and left her things, assuming she would be back in her office after the suspension.

32.     Plaintiff was distraught during her suspension, and her supervisor, Justin Harland told her: "Flock and Meyer aren't going to let up on you. The best thing for you to do is resign." Plaintiff submitted her resignation the next day on February 10, 2020 due to a constructive discharge. The retaliation was so bad and threatened to ruin her career with a phony charge of patient abuse. Spencer had no choice but to quit. The Human Resources Department at Diversicare of Sedgwick, LLC investigated the claims of patient abuse and found them to be unsupported. After her constructive discharge, Plaintiff was not paid monies lawfully owed to her unless she signed an all-encompassing release of claims against Diversicare.

33.     Plaintiff's claims consist of sexual harassment (hostile environment) in violation of Title VII, unlawful retaliation under Title VII for rebuffing said sexual advances, and a separate claim for being retaliated against for reporting unlawful and dangerous practices.

34.     After Plaintiff left employment at Diversicare, the locks to her office door were changed, and Markus Meyer allowed other employees to take personal items from her office.

35.     Diversicare would not pay Plaintiff lawfully owed monies unless she signed a release which released her from making a sex harassment or retaliation claim, an age discrimination claim, etc.  They withheld lawfully owed monies from Plaintiff.  As they dragged out paying the money lawfully owed to her, Plaintiff became financially destitute and attempted suicide.

36.     As they continued to withhold the monies, she was coerced to sign the waiver due to financial necessity.  The monies were all for things the company owed her. Not one penny was for legal claims she had against the company for sexual harassment, retaliation or "whistleblowing."  Hence, the release is defective for lack of consideration.

37.     The total lawfully owed to Plaintiff was $3,545.63. It comprised of the following items:

| | |
|---|---|
| 2/14 and 2/17 weekend, 2/15 and 2/16 not included. (32 hours x $25.07 = 802.24) | $ 802.24 |
| Three (3) days' pay for dates worked upon request of Administrator: 24 hours x $25.07 = 601.68 | 601.68 |
| Mileage reimbursement | 589.38 |
| Vacation balance of 61.92 hours @ $25.07=1552.33 | 1,552.33 |
| **Total** | **$3,545.63** |

38.     The amount deposited for this "settlement" was only $2,596.64, as taxes were taken out. Not one dime was received to waive any legal claims for sexual harassment, retaliation, wrongful discharge, etc.

39.     Diversicare continued to hassle Plaintiff by letting employees raid her office of artwork, decor, and her paperwork was missing in some cases. She had to ask Diversicare of Sedgwick, LLC repeatedly for tax information which had been in her office but was now missing. This tax information was not provided to her until June 2020.

40.     The hostile environment created by Diversicare of Sedgwick, LLC regarding her sex and retaliation caused Plaintiff damages, and caused her to quit her job on terms that were constructive discharge.

41.     After Plaintiff's constructive discharge, she was working as a saleswoman in a dress shop for far less pay, and then the dress shop went broke and closed.

42.     Plaintiff was making approximately $50,000 per year at Diversicare of Sedgwick, LLC. Her wrongful discharge cost her money and benefits. She briefly made $16 per hour as a dress sales person at Christopher and Banks, but the store closed.

43.     The actions of Diversicare in refusing to pay her lawfully owed monies until she signed a waiver caused her monetary loss, mental anguish, and damage to her career.

44.     Plaintiff seeks money damages for the Civil Rights violations against her based on her sex, female, and based on unlawful retaliation.

## VI.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### EQUAL PROTECTION VIOLATION ONE

45.     Plaintiff realleges paragraphs 1 to 44 of this Complaint as if fully set forth herein.

46.     Defendant, through its agents, servants and employees, in their official capacities, established an official policy, practice or custom of reckless or deliberate indifference to persons in the position of Plaintiff.

47.     Defendant has discriminated against women by establishing, maintaining and enforcing policies which create or foster a sexually hostile work environment by treating women differently than men and by retaliating against those, including Plaintiff, who complain about and/or refuse to countenance a sexually hostile work environment. Unwanted sexual advances by Meyer violate Title VII.

48.     In the alternative, if the discriminatory practice of establishing, maintaining and enforcing policies which create or foster a sexually hostile work environment, by treating women differently than men and by retaliating against those, including Plaintiff, who complain about and/or refuse to countenance a sexually hostile work environment was not a policy of the Diversicare of Sedgwick, it was a practice, procedure, or custom which Diversicare and its policy makers had actual or constructive knowledge.

49.     Defendant's policy, custom or practice in general, and as applied to Plaintiff in particular, was purposeful and intentional.

50.     Defendant deprived Plaintiff of her rights to which she is entitled under the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, all in violation of 42 U.S.C. §1983.

51.     Plaintiff has been damaged as a direct and proximate result of the Defendant's acts and omissions aforesaid.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages for attorney's fees and costs for interest as allowed by law and for such other and further relief as is just in the premises.

## SECOND CAUSE OF ACTION

## EQUAL PROTECTION VIOLATION TWO

52.     Plaintiff realleges paragraphs 1 to 51 of this Complaint as if fully set forth herein.

53.     Defendant deprived Plaintiff of rights protected by the Equal Protection clause of the Fourteenth Amendment to the United States Constitution by establishing, maintaining or enforcing policies which create or foster a sexually hostile work environment, by treating women differently than men and by retaliating against those, including Plaintiff, who complain about and/or refuse to countenance a sexually hostile work environment.

54.     In the alternative, if the acts complained of were not committed by the individual Defendants pursuant to an official policy, practice or custom of Diversicare, they were committed by the individual Defendants with the purpose and intent of creating or fostering a sexually hostile work environment, by treating women differently than men and by retaliating against those, including Plaintiff, who complain about and/or refuse to countenance a sexually hostile work environment.

55.     Each individual employee or manager or assistant manager acted under color of state law, and their adverse actions toward the Plaintiff occurred in the scope of their employment.

56.     Each individual Defendant's conduct was a proximate cause of damages sustained by Plaintiff.

57.     Each individual Defendant acted with reckless or deliberate indifference to the rights of Plaintiff and with malice.

58.     Plaintiff has been damaged as a result of the individual Defendant's acts and omissions aforesaid.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for punitive damages in an amount sufficient to punish Defendant and deter others, for attorney's fees and costs, for interest as allowed by law and for such other and further relief as is just in the premises.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE CIVIL RIGHTS ACT, TITLE VII,

## HOSTILE WORK ENVIRONMENT - SUPERVISOR AND CO-WORKER

59.     Plaintiff realleges paragraphs 1 to 58 of this Complaint as if fully set forth herein.

60.     Plaintiff was subjected to unwelcome offensive conduct from her co-workers and supervisors employed by the Defendant that created a hostile environment, as Plaintiff's supervisors knew or should have known about the harassment, having participated in and/or encouraged the harassment or ignored the harassment after Plaintiff's complaints.

61.     Such conduct was based on Plaintiff's sex.

62.     The hostile environment affected a term, condition, or privilege or her employment.

63.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages, including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate her for her injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of Title VII of the Civil Rights Act of 1964, as Amended.

<u>**FOURTH CAUSE OF ACTION**</u>

<u>**VIOLATION OF THE CIVIL RIGHTS ACT, TITLE VII**</u>

<u>**SEXUAL DISCRIMINATION**</u>

64.     Plaintiff realleges paragraphs 1 to 63 as if fully set forth herein.

65.     Defendant discriminated against Plaintiff with respect to terms and conditions of her employment on the basis of her sex in violation of the Title VII of the Civil Rights Act of 1964, as Amended by treating her differently than similarly-situation male co-workers. Plaintiff was singled out for unwanted sexual harassment and was punished when she did not comply.

66.     Plaintiff's sex was a motivating factor in the decision-making regarding Plaintiff's terms and conditions of employment.

67.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate her for her injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of Title VII of the Civil Rights Act of 1964, as Amended.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE CIVIL RIGHTS ACT, TITLE VII

## RETALIATION

68.     Plaintiff realleges paragraphs 1 through 67 as if fully set forth herein.

69.     Plaintiff complained to Defendants about the sexual harassment she experienced and otherwise opposed practices made unlawful by Title VII of the Civil Rights Act of 1964, as Amended.

70.     Defendant retaliated against Plaintiff because of her complaints and opposition to harassment and unsafe conditions for the patients.

71.     Plaintiff's sex and her protected activity were motivating factors in Defendant's retaliation against her.

72.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear;

anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgement against Defendants in an amount which will fully and fairly compensate her for her injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of Title VII of the Civil Rights Act of 1964, as Amended.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE CIVIL RIGHTS ACT, TITLE VII

## CONSTRUCTIVE DISCHARGE

73.     Plaintiff realleges paragraphs 1 through 72 as if fully set forth herein.

74.     Defendant and/or its agents with Defendant's authority made Plaintiff's working conditions intolerable, forcing Plaintiff to resign her employment.

75.     Defendant's agents with Defendant's authority acted with the intent of forcing Plaintiff to quit or Plaintiff's resignation was a reasonably foreseeable result of Defendant's supervisor's and assistant supervisor's actions.

76.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgement against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for interest as allowed by law, for

attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of Title VII of the Civil Rights Act of 1964, as Amended.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE KANSAS ACT AGAINST DISCRIMINATION

## HOSTILE WORK ENVIRONMENT

77.     Plaintiff realleges paragraphs 1 through 76 as if fully set forth herein.

78.     Plaintiff was subjected to unwelcome offensive conduct from her co-workers and supervisors employed by the Defendant that created a hostile environment.

79.     Such conduct was based on Plaintiff's sex.

80.     The hostile environment affected a term, condition, or privilege or her employment.

81.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate her for her injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Kansas Act Against Discrimination.

## EIGHTH CAUSE OF ACTION

**VIOLATION OF THE KANSAS ACT AGAINST DISCRIMINATION**

**SEXUAL DISCRIMINATION**

82.     Plaintiff realleges paragraphs 1 through 81 as if fully set forth herein.

83.     Defendant discriminated against Plaintiff with respect to terms and conditions of her employment ont he basis of her sex in violation of the Title VII of the Civil Rights Act of 1964, as Amended.

84.     Plaintiff suffered adverse action including, but not limited to termination of employment.

85.     Plaintiff's sex was a motivating factor in the decision-making regarding Plaitniff's terms and conditions of employment.

86.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future, suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent witht he purpose of the Kansas Act Against Discrimination.

**NINTH CAUSE OF ACTION**

**VIOLATION OF THE KANSAS ACT AGAINST DISCRIMINATION**

**RETALIATION**

87.     Plaintiff realleges paragraphs 1 through 86 as if fully set forth herein.

88.     Plaintiff complained to Defendant about the sexual harassment she experienced and otherwise opposed practices made unlawful by Title VII of the Civil Rights Act of 1964, as Amended.

89.     Defendant retaliated against Plaintiff because of her complaints and opposition to harassment.

90.     Plaintiff's sex and her protected activity were motivating factors in Defendant's retaliation against her.

91.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Kansas Act Against Discrimination.

## TENTH CAUSE OF ACTION

## VIOLATION OF THE KANSAS ACT AGAINST DISCRIMINATION

## CONSTRUCTIVE DISCHARGE

92.     Plaintiff realleges paragraphs 1 through 91 as if fully set forth herein.

93.     Defendant and/or its agents with Defendant's authority made Plaintiff's working conditions intolerable, forcing Plaintiff to resign her employment.

94.     Defendant's agents with Defendant's authority acted with the intent of forcing Plaintiff to quit. Plaintiff's resignation was a reasonable foreseeable result of Defendant's supervisor's actions.

95.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for interest as allowed by law, for attorney's fees, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Kansas Act Against Discrimination.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Tammy L. Spencer, respectfully requests that this Court:

1.     Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of sex and retaliation.

2.     Order the Defendant to pay Plaintiff back pay, front pay, compensatory damages, consequential damages and liquidated damages in the amounts to be proven at trial, and all other affirmative and equitable relief necessary to eradicate the effects of Defendant's unlawful employment practices.

3.     Direct the Defendant to expunge all negative reports in Plaintiff's personnel file.

4.      Order Defendant to pay Plaintiff punitive damages for its malicious and reckless conduct in an amount to be determined at trial.

5.      Award the Plaintiff her reasonable attorney's fees and expert witness fees.

6.      Award Plaintiff her costs in this action.

7.      Grant such further relief as the Court deems necessary and proper.

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all matters raised in her Complaint.

Dated this 24th day of November, 2021.

Respectfully Submitted,

Tammy L. Spencer, Plaintiff

By:      s/Martin J. Keenan
         Martin J. Keenan, #12340
         Martin J. Keenan, LLC
         121 S. Whittier Rd., Suite 420
         Wichita, KS 67207
         (620) 793-0347
         keenanlawyer@gmail.com
         *Attorney for Plaintiff*