## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**TAMMY L. SPENCER,**

      **Plaintiff,**

      **v.**

**DIVERSICARE OF SEDGWICK, LLC, and
DIVERSICARE HEALTHCARE
SERVICES, INC.,**

      **Defendants.**

**Case No. 21-CV-1138-JAR-KGG**

## MEMORANDUM AND ORDER

Plaintiff Tammy L. Spencer files this lawsuit against her former employers, Defendant Diversicare of Sedgwick, LLC, and Diversicare Healthcare Services, Inc., asserting ten causes of action under various legal theories: the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (Counts I and II); Title VII of the Civil Rights Act of 1964 (Counts III–VI); and the Kansas Act Against Discrimination ("KAAD") (Counts VII–X). This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 21). The matter is fully briefed and the Court is prepared to rule. For the reasons explained below, the Court grants Defendants' motion in part.

## I.    Standard

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on

its face."[1]  "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[2]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[3]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[4]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[5]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the Court "must take all of the factual allegations in the complaint as true, [but it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[6]  Thus, the Court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[7]  Second, the Court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[8]  "A claim has facial plausibility when the plaintiff pleads factual

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

[6] *Id*. (quoting *Twombly*, 550 U.S. at 555).

[7] *Id.* at 678–79.

[8] *Id*. at 679.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

## II.     Background

For purposes of the pending motion to dismiss, the Court accepts the following well-pleaded factual allegations as true.  Plaintiff was employed by Diversicare of Sedgwick, LLC ("Diversicare") at its long-term care center in Sedgwick, Kansas ("the Center") as a social worker in charge of patient discharges and complaints and concerns from August 2018 through her resignation on or about February 10, 2020.  From the start of her employment, Plaintiff was subjected to unwanted sexual advances and comments by the Center's Administrator, Markus B. Meyer.  The sexually-harassing conduct continued until August 2019, when Plaintiff rebuffed Meyer's sexual advances during an incident in his office.

Immediately following Plaintiff's opposition to the sexual harassment in August 2019, Meyer began to retaliate against Plaintiff.  Meyer continued to subject Plaintiff to retaliatory conduct through her last day of employment on February 10, 2020.  The retaliation included berating and embarrassing Plaintiff in front of other employees and managers.  It also included giving Plaintiff unpleasant and demeaning work duties that were outside the scope of her social work assignments, such as painting rooms in the facility and moving patient beds, cooking, doing residents' hair and makeup, driving patients to and from doctor's appointments, and organizing Halloween activities for the facility.

Meyer hosted a retreat for managers at his home on October 29, 2019.  About a dozen people were present, including Plaintiff, and all employees were asked to give suggestions on how the facility could be improved.  Plaintiff relayed to all present that the maintenance man

---

[9] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

employed by the Center left tools, exposed wires, sharp objects, and an unfinished plumbing job in a patient's room, which posed a danger.  When Plaintiff mentioned that Diversicare needed to fix these dangerous conditions, Meyers snapped and shouted at Plaintiff in front of the entire group, "Go pack up your shit and get out of the office!"[10]  Plaintiff refused to leave the retreat, reported to work as usual, and was allowed to work.

Four leaders of Diversicare were scheduled to attend the annual convention at the home office in Brentwood, Tennessee on February 12, 2020: Justin Harland, Kim Flock, Meyer, and Plaintiff.  On February 7, 2020, Flock and Meyer suspended Plaintiff with pay for allegedly abusing patients.  Plaintiff contends that the suspension was retaliation for rebuffing Meyer's sexual harassment and complaining about illegal activities at the Center, and was intended to prevent Plaintiff from attending the annual convention for fear she might reveal illegal activities and deficiencies at the facility.  Plaintiff left her personal things at the facility on February 7, 2020, as she assumed that she would be back in her office after the suspension.

Plaintiff was distraught during her suspension and her supervisor, Harland, told her, "Flock and Meyer aren't going to let up on you.  The best thing for you to do is resign."[11]  Plaintiff submitted her resignation the next day, February 10, 2020.  Plaintiff alleges that the retaliation was so bad, and threatened to ruin her career with phony charges of patient abuse, that she had no choice but to quit.  The Human Resources Department at Diversicare investigated the charges of patient abuse and found them to be unsupported.

After Plaintiff left her employment, she was subjected to further retaliation.  The locks to her office were changed and Meyer allowed other employees to take personal items from her

---

[10] Doc. 17 ¶ 20.

[11] *Id.* ¶ 32.

office.  Diversicare would not pay Plaintiff unless she signed a release, including the earnings for her seven weeks of work.  Plaintiff became financially destitute and attempted suicide.

***Separation and Release Agreement***

Plaintiff signed a Separation and General Release Agreement (the "Agreement") on April 3, 2020, wherein she waived and released any and all claims she had against Defendants arising out of her employment, in exchange for a separation payment.  The Agreement states in relevant part:

1. **Separation and Effective Date**:  You resigned from your employment with Diversicare on February 17, 2020 ("Separation Date") without notice.  You will be paid your regular wages, less standard withholdings, through the Separation Date.  This Agreement shall be effective on the eighth (8th) calendar day after you sign and return it to Diversicare (the "Effective Date").  As described below, you have 21 days to consider this Agreement.  In order to obtain the benefits outlined herein, you must execute and return the Agreement to Diversicare within 21 days of receipt.  You are not required to wait 21 days.  Returning the Agreement early will shorten the consideration period.

2. **Separation Payment**: In consideration of and conditioned on your release of claims and promises in this Agreement, Diversicare agrees to pay you $3,545.63 (the "Separation Payment").  You acknowledge and agree that, but for your agreement to waive and release all claims against Diversicare as set forth in this Agreement and your compliance with the terms of this Agreement, you would not otherwise be entitled to the Separation Payment.

. . . .

4. **Release of All Claims**:

   a. You understand and agree that by signing this Agreement, you give up any and all rights to make any legal claim against or to sue Diversicare or any of its affiliates, associated operations, parents, management companies, subsidiaries, partners, directors, officers, supervisors, employees, attorneys, and all of their predecessors and successors in interest. Diversicare along with each of the foregoing are collectively referred to as "Released Parties."

   b. In exchange for the benefits set forth above, you, on your own behalf and for any other person who may be entitled to make a claim for or through you, agree to irrevocably and unconditionally waive and release each and every and all claims, of any kind, that you have or could have had, against the Released Parties, under all federal and state laws, whether known or unknown, and whether foreseen or unforeseen arising from, or in any way related to, your employment with the Released Parties. This includes all injuries, claims, and actions with respect to, arising out of, or sustained during employment or cessation of employment with Diversicare, including, but not limited to, claims under: Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991; the ADEA and OWBPA . . .; the National Labor Relations Act; the Americans with Disability [sic] Act; the Family Medical Leave Act; the Equal Pay Act; the Employee Retirement Income Security Act; the Civil Rights Act of 1866; the Genetic Information Non-Discrimination Act; any state or federal statute providing whistle-blower protection, including the Dodd-Frank law; any state equal employment opportunity or human rights law for wrongful discharge and/or breach of contract; based on a federal, state, or local statute, regulation, or ordinance arising in tort, including, but not limited to, invasion of privacy, defamation, fraud, and infliction of emotional distress; based on common law or public policy; and all claims under all other laws including the laws of contract or tort.

   c. Nothing in this Agreement prevents you from filing a charge with and/or participating in an investigation with the Equal Employment Opportunity Commission ("EEOC"). You, however, waive and release any and all rights to recover damages or to obtain equitable relief from Diversicare or any Released Party related to any released claim, whether in an EEOC action commenced by you or

in a lawsuit or administrative action commenced by someone other
than you, and including class and collective actions.[12]

The Agreement provided Plaintiff would by paid $3,545.63 for wages, mileage
reimbursement, and her vacation pay balance.  After taxes, the settlement amount was $2,596.64.
Tax information stored in Plaintiff's office was not provided to her until June 2020.  The
Agreement further provided that Plaintiff had the right, and was advised to, consult with an
attorney before signing.[13]

### EEOC Charge

On January 11, 2021, Plaintiff's counsel faxed a "complaint" on her behalf to the Equal
Employment Opportunity Commission ("EEOC").[14]  On January 14, 2021, an EEOC
representative communicated with Plaintiff's counsel regarding the information needed to file a
Charge of Discrimination against Defendants.[15]  Plaintiff filed a verified Charge of
Discrimination ("Charge") with the EEOC and the Kansas Human Rights Commission on
February 19, 2021, alleging unlawful employment practices; specifically, discrimination based
on sex and retaliation.[16]

## III.   Discussion

Defendants move to dismiss Plaintiff's First Amended Complaint on multiple grounds:
(1) she waived and released all claims asserted; (2) her Equal Protection Clause claims in Counts
I and II should be dismissed based on her failure to state plausible claims for relief; (3) her Title
VII and KAAD claims in Counts III through X are barred based on her failure to timely exhaust

---

[12] Doc. 25, Ex. A (filed under seal).

[13] *Id.* at 2–3, ¶ 6.

[14] Doc. 17-1.

[15] Doc. 17-2.

[16] Doc. 28-2.

her administrative remedies; and (4) she has failed to sufficiently plead claims for retaliation in violation of the Fair Labor Standards Act ("FLSA"), the First Amendment, or for conduct protected by Occupational Safety and Health Administration ("OSHA") regulations.  The Court addresses these arguments in turn.

### A.  Waiver and Release

Defendants first argue that Plaintiff's Amended Complaint should be dismissed in its entirety because her execution and non-revocation of the April 3, 2020 Agreement waived and released all claims against Defendants, including the claims that she asserts in the Amended Complaint.  Plaintiff argues that the Agreement lacked consideration and claims economic duress, asserting that she was "coerced to sign the waiver due to financial necessity."[17]

On a Rule 12(b)(6) motion, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion."[18]  Notwithstanding this rule, the court may consider the complaint itself and any attached exhibits or any documents incorporated by reference without converting the motion to one for summary judgment.[19]  A court also "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[20]  The parties agree that the mere fact that Plaintiff referenced the Agreement and waiver of claims in her Amended Complaint without attaching it does not require the Court to automatically convert Defendants' motion to dismiss into a summary judgment motion.

---

[17] Doc. 17 ¶ 36.

[18] Fed. R. Civ. P. 12(d).

[19] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

[20] *Id.* (quoting *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

Moreover, the Court finds that the Agreement is central to Plaintiff's claims in this case and the parties do not dispute its authenticity.  Thus, the Court will consider the Agreement attached as a sealed exhibit to Defendants' brief in support of its motion.[21]

Diversicare argues that Plaintiff's execution and non-revocation of the Agreement constitutes a waiver and release of all claims against Defendants, including those asserted in the Amended Complaint.  Plaintiff seeks to invalidate the Agreement on the basis of economic duress and lack of consideration.  While both parties cite Kansas law in support of their respective positions, the Agreement specifies that it "is to be construed under and governed by the laws of the State of Tennessee, without reference to its conflicts of law provisions."[22]  In Tennessee, "[t]he judicial system favors the resolution of disputes by agreement between the parties."[23]  "[S]ettlement agreements made during or in contemplation of litigation are enforceable as contracts."[24]  As such, settlement agreements are "also subject to the same defenses that may be raised to defeat enforcement of other contracts."[25]  The Tennessee Supreme Court has held that courts should only rescind contracts "where some such element as actual fraud, accident, mistake, or insolvency . . . appear to justify it."[26]

The Court first considers Plaintiff's lack of consideration argument.  The Amended Complaint alleges that the monies paid to Plaintiff were all for things Diversicare "owed her. Not one penny was for legal claims she had against the company for sexual harassment,

---

[21] Doc. 25, Ex. A.

[22] *Id.* ¶ 10.a.

[23] *Lovelace v. Copley*, 418 S.W.3d 1, 29 (Tenn. 2013) (collecting cases).

[24] *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006) (citations omitted); *Green v. YMCA of Memphis*, No. W2014-02190-COA-R3-CV, 2015 WL 6736705, at *3 (Tenn. Ct. App. Nov. 4, 2015) (collecting cases).

[25] *Matlock v. Rourk*, No. M2009-01109-COA-R3-CV, 2010 WL 2836638, at *3 (Tenn. Ct. App. July 20, 2010).

[26] *Green*, 2015 WL 6736705, at *4 (quoting *Early v. Street*, 241 S.W.2d 531, 536 (Tenn. 1951)).

retaliation, or 'whistleblowing.'  Hence, the release is defective for lack of consideration."[27]
This argument misunderstands the nature of the Agreement between the parties.  The Agreement
states that Plaintiff will be paid her regular wages through the date of separation on February 17,
2020.  Plaintiff signed the Agreement in consideration of Diversicare paying her $3,545.63 in
exchange for the release of any and all legal claims against Diverscare.  Plaintiff acknowledged
that but for her agreement to waive and release claims against Diversicare, she would not
otherwise be entitled to this amount.  As set forth in the Amended Complaint, the separation
payment consisted of overtime, mileage, and vacation pay, not her wages.  Thus, the exchanged
promises serve as consideration for the contract.  The fact that Plaintiff claims that she should
have been paid for her legal claims against Diversicare does not mean the Agreement fails for
lack of consideration, and Plaintiff's defense on this ground does not have merit.

The Court now turns to Plaintiff's second argument that the Agreement is unenforceable
because she signed it under economic duress.  "Tennessee has long recognized that a contract,
although valid on its face, may not be enforceable if it can be proved that the contracting party
acted under duress."[28]  The court has defined "economic duress" as:

> [The] imposition, oppression, undue influence, or the taking of
> undue advantage of the business or financial stress or extreme
> necessities or weakness of another; the theory under which relief is
> granted being that the party profiting thereby has received money,
> property, or other advantage, which in equity and good conscience
> he ought not be permitted to retain.[29]

---

[27] Doc. 17 ¶ 36.

[28] *Holloway v. Evers*, No. M2006-01644-COA-R3CV, 2007 WL 4322128, at *8 (Tenn. Ct. App. Dec. 6, 2007).

[29] *Cummings Inc. v. Dorgan*, 320 S.W.3d 316, 331–32 (Tenn. Ct. App. 2009) (alteration in original) (quoting *Crocker v. Schneider*, 683 S.W.2d 335, 338–39 (Tenn. Ct. App. 1984)).

In *Holloway v. Evers*, the Tennessee Court of Appeals considered a request for rescission of a contract due to duress.[30]  In that case, the plaintiff alleged that his business partners took advantage of his weak financial situation and health problems to coerce him into selling his portion of a jointly-owned business.[31]  The court concluded that the plaintiff's allegations failed to show duress, as there was "no evidence of any wrongful or illegal act by [the business partners] or even improper external pressure."[32]  The court explained:

> The financial and health problems [the plaintiff] was facing were unfortunate and undoubtedly caused him stress.  However, they were not caused by the defendants, and many people are required to make business and other decisions while facing such problems. There is simply no evidence that some action by the defendants deprived [the plaintiff] of his free will to make the best decision he could in the circumstances.[33]

Thus, the lack of action by the defendants was a determinative factor in the court's conclusion.[34]

In this case, the Amended Complaint alleges that Diversicare would not pay Plaintiff lawfully owed monies unless she signed the Agreement, that as a result, she became "financially destitute" and suicidal, and that she was "coerced" into signing the waiver due to financial necessity.[35]  Unlike the plaintiff in *Holloway*, the Amended Complaint is replete with allegations of wrongdoing by Diversicare, Meyer, and Flock, including making a "phony" charge of patient abuse and withholding her pay.  She also alleges that her supervisor, told her that Meyer and Flock were not going to let up on her and advised her that best thing for her to do was resign. These allegations are sufficient to state a plausible defense to the Defendants' waiver affirmative

---

[30] 2007 WL 4322128, at *1.

[31] *Id.* at *9.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] Doc. 17 ¶¶ 35–36.

defense at the dismissal stage of these proceedings.[36]  The Court thus turns to the merits of Plaintiff's claims.

### B.  Equal Protection

In Counts I and II, Plaintiff alleges that Defendants deprived her of her rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, in violation of 42 U.S.C. § 1983.  Count I alleges that Defendants, in their official capacities, established an official policy, practice, or custom of reckless or deliberate indifference to women.  Count II alleges that Defendants, acting under the color of state law, established, maintained, or enforced policies that create or foster a sexually hostile work environment by treating women differently than men.

The "Equal Protection Clause requires the government to treat similarly situated people alike."[37]  Pursuant to § 1983, any "person who, under color of . . . [law] . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."[38]  Section 1983 does not create any substantive rights.[39]  Rather, § 1983 provides only a right of action to remedy a violation of a right secured by the Constitution or laws of the United States.[40]  Private individuals

---

[36] *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (explaining that "[a] plaintiff need not anticipate in the complaint an affirmative defense that may be raised by the defendant; it is the defendant's burden to plead an affirmative defense.") (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Ghailani v.* Sessions, 859 F.3d 1295, 1306 (10th Cir. 2017)).

[37] *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

[38] 42 U.S.C. § 1983.

[39] *Dixon v. City of Lawton*, 898 F.2d 1443, 1447 (10th Cir. 1990).

[40] *Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002).

and entities may be deemed state actors if they have "acted together with or [have] obtained significant aid from state officials, or [if their] conduct is otherwise chargeable to the State."[41]

Plaintiff's response in opposition to Defendants' motion to dismiss is devoid of any mention of, much less argument against, dismissal of Counts I and II.  The Court construes Plaintiff's failure to respond as a concession that these claims are subject to dismissal. Moreover, aside from a bald statement in Count II that Defendants' employees "acted under of state law," Plaintiff's Amended Complaint contains no factual allegations concerning Defendants that could be characterized as state action.  "[P]rivate conduct that is not fairly attributable to the State is simply not actionable under § 1983, however discriminatory or wrongful the conduct is."[42]  Plaintiff has failed to state § 1983 claims that are facially plausible, and Counts I and II are therefore dismissed.

### C.     Retaliation Based on Conduct Not Protected Under Title VII and KAAD

Plaintiff also fails to respond to Defendants' motion to dismiss any retaliation claims based on conduct protected by the FLSA, OSHA regulations, and the First Amendment.  As Defendants note, while Plaintiff mentions these as bases for her retaliation claims, she does not specifically assert any retaliation claims based on conduct protected by the FLSA, OSHA regulations, or the First Amendment in Counts I through X of her Amended Complaint.  As with her § 1983 claims, the Court construes Plaintiff's failure to respond as a concession that these putative claims are subject to dismissal.  Accordingly, Plaintiff's retaliation claims are limited to

---

[41] *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

[42] *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (quoting *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995)).

those alleged under Title VII and the KAAD, as specifically plead in Claims V and IX of the Amended Complaint.

### D.    Exhaustion

Defendant seeks dismissal of Plaintiff's Title VII and KAAD claims alleged in Counts III through X based on her failure to timely exhaust her administrative remedies.  These claims allege hostile work environment by a supervisor under Title VII and KAAD (Counts III and VII); sex discrimination under Title VII and KAAD (Counts IV and XIII); retaliation under Title VII and KAAD (Counts V and IX); and constructive discharge under Title VII and KAAD (Counts VI and X).

Title VII requires a plaintiff to exhaust her administrative remedies by filing a charge with the EEOC within 300 days of the alleged discrimination.[43]  The KAAD requires that a complaint be filed within six months (180 days) of the alleged act of discrimination.[44]  A plaintiff's failure to exhaust administrative remedies is no longer a jurisdictional bar to suit, but instead "permits a defendant only an affirmative defense."[45]  Because a plaintiff's failure to timely exhaust is akin to statutes of limitations, the affirmative defense is not often considered as a basis for dismissal under Rule 12(b)(6).[46]  The Tenth Circuit has recognized, however, that "on occasion it is proper to dismiss a claim on the pleadings based on an affirmative defense . . . when the complaint itself admits all the elements of the affirmative defense by alleging the

---

[43] 42 U.S.C. § 2000e-5.  "The 300 day limitation applies in those states that have statutorily prohibited discrimination," such as Kansas.  *Sloan v. Boeing Co.*, No. 95-3354, 1997 WL 8868, at *2 & n.4 (10th Cir. 1997) (citation omitted).

[44] K.S.A. 44-1005(i).

[45] *Brown v. Keystone Learning Servs.*, 804 F. App'x 873, 882 (10th Cir. 2020) (citing *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1183 (10th Cir. 2018)).

[46] *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

factual basis for those elements."[47]  Because Plaintiff's initial EEOC "complaint" and subsequent Charge are either attached to or cited in the Amended Complaint, are central to her claims, and there is no dispute about their authenticity, the Court considers her EEOC documents without converting the Rule 12(b)(6) motion to a motion for summary judgment.

As a threshold issue, the Court must determine which EEOC document triggered the exhaustion deadlines.  Defendants argue that the "complaint" faxed to the EEOC on January 11, 2021, did not contain all of the information required to file a charge of discrimination, and thus Plaintiff did not file a perfected charge with the EEOC and the KAAD until February 19, 2021. Plaintiff contends that the January 11, 2021 EEOC complaint was sufficient to constitute a filed charge, resulting in a limitations period covering the alleged unlawful conduct on or after March 17, 2020 for any Title VII claims, and conduct on or after July 11, 2020, for any KAAD claims.

The Supreme Court has held that "a filing other than a formal charge, such as a questionnaire, may be considered as a charge if the filing contains the required information and can reasonably be interpreted as a request for agency action."[48]  An EEOC intake questionnaire may constitute an EEOC "charge."[49]  Here, Plaintiff's counsel faxed an eight-page complaint to the EEOC identifying Plaintiff as the complainant; detailing the nature of the complaint to the EEOC regarding her allegations of sex discrimination, sexual harassment, and retaliation; and setting out the injuries she claimed to have suffered as a result.[50]  The complaint was signed by counsel on behalf of Plaintiff.  On January 14, 2021, counsel responded to an email from the EEOC and provided the address for the Center; the EEOC Senior Investigator Support Assistant

---

[47] *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (citations omitted).

[48] *Hankishiyev v. ARUP Labs.*, 732 F. App'x 673, 677 (10th Cir. 2018) (citing *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)).

[49] *Id.*

[50] Doc. 17-1.

responded the same day with proposed wording for Plaintiff's charge.[51]  The EEOC charge dated February 19, 2021, alleged claims of discrimination based on sex, hostile work environment, and retaliation in violation of Title VII.[52]

The Court finds that the January 11, 2021 complaint demonstrates Plaintiff's "intent to activate the administrative process" because counsel named Diversicare as the charged party, and included allegations of retaliation, discrimination, and harassment based on sex.  Although counsel did not use an EEOC form or questionnaire, the Court construes the complaint "as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."[53]  Even if the January 2021 complaint was defective as initially filed, Plaintiff's signed and verified charge of discrimination filed on February 19, 2021, which was filed before the EEOC issued the right-to-sue letter on February 22, 2021, would have cured any defect.[54]

Thus, the January 11, 2021 EEOC complaint was sufficient to trigger administrative exhaustion.  Accordingly, any KAAD claims based on conduct that occurred prior to July 11, 2020 are time barred, as are any Title VII claims based on conduct that occurred prior to March 17, 2020.

With this framework in mind, the Court proceeds to discuss whether Plaintiff's Title VII and KAAD claims were timely exhausted.

---

[51] Doc. 17-2.

[52] Doc. 28-2.

[53] *Holowecki*, 552 U.S. at 402.

[54] 29 C.F.R. § 1601.12(b).

### 1.    Discrete Adverse Employment Actions

The United States Supreme Court has explained that discrete discriminatory and retaliatory acts "such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify."[55] This type of "discrete retaliatory or discriminatory act 'occur[s]' on the day that it 'happen[s],'" and "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."[56] However, this precedent does not "bar an employee from using prior acts as background evidence in support of a timely claim."[57]

Plaintiff alleges the following discrete acts of discrimination under Title VII and KAAD:

> Defendant discriminated against Plaintiff with respect to terms and conditions of her employment on the basis of her sex . . . by treating her differently than similarly-situated male coworkers. Plaintiff was singled out for unwanted sexual harassment and punished when she did not comply;[58]
>
> . . . .
>
> Plaintiff suffered adverse action, including but not limited to termination of her employment;[59]
>
> . . . . [and]
>
> Plaintiff's sex was a motivating factor in the decision-making regarding Plaintiff's terms and conditions of employment.[60]

As alleged in the Amended Complaint, Plaintiff's sex discrimination claims in Counts IV and VIII are premised entirely upon adverse actions that occurred during Plaintiff's employment

---

[55] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

[56] *Id.* at 110, 113; *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1178 (10th Cir. 2011) (explaining that the Supreme Court's ruling in *Morgan* does not alter the rule that discrete acts of discrimination "trigger the statute of limitations when announced to the claimant" (citing *Morgan*, 536 U.S. at 114)).

[57] *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (quoting *Morgan*, 536 U.S. at 113).

[58] Doc. 17 ¶¶ 65, 83.

[59] *Id.* ¶ 84.

[60] *Id.* ¶¶ 66, 85.

and culminated in her forced resignation on February 10, 2020.  Accordingly, the allegations in
the Amended Complaint confirm that her Title VII and KAAD sex discrimination claims are
time-barred, because she did not file her January 11, 2021 complaint until 336 days after the date
of the last alleged adverse action based on her sex, February 10, 2020.  Accordingly, Counts IV
and VIII are dismissed for failure to timely exhaust.[61]

### 2.      Hostile Work Environment/Sexual Harassment

Plaintiff also alleges hostile work environment by a supervisor and co-workers based on
her gender.  "Hostile environment claims are different in kind from discrete acts.  Their very
nature involves repeated conduct."[62]  "The 'unlawful employment practice' therefore cannot be
said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct
contrast to discrete acts, a single act of harassment may not be actionable on its own."[63]  The
Supreme Court has explained,

> The timely filing provision only requires that [the] plaintiff file a
> charge within a certain number of days after the unlawful practice
> happened.  It does not matter . . . that some of the component acts
> of the hostile work environment fall outside the statutory time
> period.  Provided that an act contributing to the claim occurs
> within the filing period, the entire time period of the hostile work
> environment may be considered by a court for the purposes of
> determining liability.[64]

This Court therefore must determine "whether the acts about which an employee
complains are part of the same actionable hostile work environment practice, and if so, whether

---

[61] Accordingly, the Court need not reach Defendants' alternative argument that Plaintiff's sex
discrimination claims should be dismissed because she has failed to plead any "factual content that allows the court
to draw the reasonable inference that [Defendants] are liable for [sex discrimination]." *Iqbal*, 556 U.S. at 662.

[62] *Morgan*, 536 U.S. at 115 (citing 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348–
49 (3d ed. 1996)).

[63] *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Croy v. Cobe Labs, Inc.*, 345
F.3d 1199, 1202 (10th Cir. 2003).

[64] *Morgan*, 536 U.S. at 117.

any act falls within the statutory time period."[65]   The Tenth Circuit has recognized certain non-exclusive factors that guide this analysis, such as:

> whether the pre- and post-limitation period acts were "related by type, frequency, and perpetrator."  We have also looked to whether the acts occurred when the employee "was working in the same place."  These factors are not exhaustive: *Morgan* "does not limit the relevant criteria, or set out factors or prongs."  "[F]lexibility is useful in a context as fact-specific and sensitive as employment discrimination and as amorphous as hostile work environment."
>
> Conversely, an employer will not be liable when there is "no relation" between the pre- and post-limitations acts, or if "for some other reason, such as certain intervening acts by the employer," the later acts are no longer part of the same hostile work environment claim.[66]

Plaintiff alleges the hostile work environment began in 2018, when she received unwanted sexual advances and comments from Meyer about her appearance and frequent touching of her shoulders and back in a sexually suggestive manner.[67]   This sexual harassment continued through 2019, when Meyer gave Plaintiff birthday gifts that she refused to accept; invited her to attend a picnic with him and texted her about lying with him on a blanket, which she refused to do; and culminating in his August 2019 attempt to kiss her after pulling her into his office, which she rebuffed.[68]

As a threshold issue, the Court addresses the nature of Plaintiff's claims.  Plaintiff maintains that although the sexual harassment by Meyers ended in August 2019, the retaliation

---

[65] *Hansen v. SkyWest Airlines*, 844 F.3d 914, 923 (10th Cir. 2016) (citing *Morgan*, 536 U.S. at 120).

[66] *Id.* (alteration in original) (first quoting *Duncan v. Manager, Dep't of Safety City & Cnty. of Denver*, 397 F.3d 1300, 1309 (10th Cir. 2005); then quoting *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008); then quoting *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010); and then quoting *Morgan*, 536 U.S. at 118).

[67] Doc. 17 ¶¶ 11–12.

[68] *Id.* ¶¶ 13–15.

for refusing his sexual advances continued until June 2020.[69]  Plaintiff argues that the sexual

harassment, "the retaliation for the sexual harassment," the retaliation for making complaints

about safety concerns, and the false allegations about abusing a patient, constitute a continuing

pattern of violations engineered by Meyer, and thus her deadlines under Title VII and KAAD are

"tolled."  Plaintiff's argument is misplaced, however, as her hostile work environment and

retaliation allegations are distinct claims and not a single continuing violation.  While inartfully

drafted, Plaintiff's Amended Complaint appears to allege claims for retaliatory harassment by

Meyers after the sexual harassment ended in August 2019 as well as retaliation in the form of

discrete adverse employment actions after Plaintiff reported safety violation concerns.

The District of Kansas "has recognized that there is 'some confusion' about 'whether

retaliatory harassment is a theory of retaliation or an entirely separate claim.'"[70]  The Tenth

Circuit has noted that "retaliatory harassment, if sufficiently severe, may constitute 'adverse

employment action' for purposes of a retaliation claim."[71]  Thus, this Court "frequently has

analyzed claims for retaliation and retaliatory harassment as separate and distinct claims."[72]

Plaintiff's claim of hostile work environment/sexual harassment is based on allegations

regarding conduct that ceased in August 2019, when she rebuffed Meyer's sexual advances.

Although Plaintiff is correct that this claim is analyzed under a continuing violation theory, both

Plaintiff's Title VII and KAAD sexual harassment claims are time barred because her EEOC

complaint and Charge were not filed until approximately 15 months after the last date of any

---

[69] Doc. 28 at 12.

[70] *Kincaid v. Unified Sch. Dist. No. 500*, --- F. Supp. 3d---, 2021 WL 5231993, at *5 (D. Kan. Nov. 10, 2021) (alteration omitted) (quoting *Bermudez v. City of Topeka*, No. 18-cv-4141-HLT-ADM, 2020 WL 206766, at *4 n.4 (D. Kan. Jan. 14, 2020)).

[71] *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998).

[72] *Kincaid*, 2021 WL 5231993, at *5 (collecting cases).

alleged hostile or unwanted sexually harassing conduct.  Thus Counts III and VII are dismissed for failure to timely exhaust.

To the extent Plaintiff alleges facts as part of Counts III and VII that support claims of retaliatory harassment for failure to respond positively to Meyer's sexual advances, these are separate and distinct claims.  As discussed below, this distinction has a practical effect for Plaintiff's Title VII retaliation claims.

### 3.    Constructive Discharge

If a plaintiff demonstrates constructive discharge, that is, "discharge . . . in circumstances of discrimination so intolerable that a reasonable person would resign, we treat the employee's resignation as though the employer actually fired [her]."[73]  Plaintiff alleges that she was constructively discharged on February 10, 2020, as a result of the hostile work environment and retaliation; therefore, her constructive discharge claim "can be regarded as an aggravated case of . . . hostile work environment,"[74] and, by extension, retaliatory hostile work environment.  It is clear that Plaintiff's constructive discharge claims in Counts VI and X are based on events that occurred during her employment and culminated in her resignation on February 10, 2020.

Because Plaintiff is barred from pursuing any claims based on events that occurred prior to prior to July 11, 2020 or March 17, 2020, Counts VI and X are time-barred under both KAAD and Title VII, respectively.  Thus, Plaintiff's constructive discharge claims in Counts VI and X are also dismissed.

---

[73] *Green v. Brennan*, 578 U.S. 547, 560 (2016).

[74] *Pa. State Police v. Suders*, 542 U.S. 129, 146 (2004).

4.        **Retaliation**

Finally, Plaintiff alleges that she was subjected to unlawful retaliation in violation of Title VII and KAAD because she complained about the sexual harassment she experienced and because she opposed and complained about unsafe conditions for the patients.

Plaintiff states the following factual allegations in support of these claims:

- After she refused Meyer's sexual advances in August 2019, she was subjected to retaliation and harassment by Meyer through her last day of employment on February 10, 2020, including: calling her Ms. Spencer instead of Tammy; berating and embarrassing Plaintiff in front of other employees and managers; and giving her unpleasant and demeaning work duties that were outside the scope of her social work assignments.[75]

- On February 7, 2020, Meyer and Kim Flock suspended Plaintiff with pay for allegedly abusing patients in retaliation for rebuffing the sexual harassment and for reporting legal deficiencies in the company;[76]

- On February 10, 2020, Plaintiff had no choice but to quit because the retaliation was so bad that it threatened to ruin her career;

- After she was forced to resign on February 10, 2020, Defendants' retaliation continued post-employment, and included: refusing to pay monies lawfully owed unless she signed a release of claims; changing the locks on her former office

---

[75] Doc. 17  ¶¶ 17–18, 26–28.

[76] *Id.*  ¶ 31.

door; and allowing other employees to take her personal items; and delaying

providing Plaintiff with tax information she requested until May or June 2020.[77]

Title VII prohibits an employer from retaliating against an employee "because [s]he has

opposed any practice made an unlawful employment practice by this subchapter."[78]  As noted

above, discrete claims of retaliation require a litigant to file a claim within 300 days of the

alleged retaliatory conduct.[79]  But claims of retaliatory harassment, like claims of hostile work

environment, may span a period longer than 300 days under the continuing violation doctrine.[80]

Accordingly, the Court again addresses the nature of Plaintiff's allegations, which conflate both

theories of retaliation.

First, Plaintiff claims that the retaliatory harassment—including embarrassing her and

giving her demeaning assignments, changing the locks on her office door, allowing coworkers to

take her belongings, and refusing to return files stored in her office— continued after she

submitted her resignation and ceased in June 2020, at the latest when her tax documents were

returned.  Thus, Plaintiff's Title VII claims are timely under the continuing violation doctrine

because the January 2021 EEOC complaint was filed less than 300 days after the alleged

retaliatory harassment ended in June 2020.  Plaintiff's KAAD claims are time-barred, however,

because the alleged conduct occurred prior to July 11, 2020.

Second, Plaintiff's claims of discrete retaliatory acts that occurred during her

employment—including her suspension for allegedly abusing patients and refusing to pay her

until she signed the Agreement releasing all claims against Defendants—are either time-barred

---

[77] *Id.* ¶¶ 32, 34–39.

[78] 42 U.S.C. § 2000e-3(a).

[79] *Duncan v. Mgr., Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)).

[80] *Id.* (citing *Morgan*, 536 U.S. at 117).

or based on her complaints about safety violations at the Center.  As previously discussed, Plaintiff's retaliation claims are limited to allegations of violations under Title VII and the KAAD.  There are no discrete claims of whistleblower retaliation set forth in the Amended Complaint.

Accordingly, Count V is dismissed in part for failure to timely exhaust with respect to Plaintiff's claim of discrete acts of retaliation; Count IX is also dismissed for failure to timely exhaust and for failure to state a plausible claim for relief.  Plaintiff's Title VII claim of retaliatory harassment in Count V survives Defendants' motion to dismiss.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 21) is **granted in part and denied in part**. The motion is **granted** with respect to the Equal Protection claims in Counts I and II; the retaliation claims based on conduct not protected under Title VII and KAAD in Counts V and IX; and the hostile work environment/sexual harassment, sex discrimination, and constructive discharge claims in Counts III, IV, VI VII, VIII, and X.  The motion is also **granted** on the discrete retaliation claims in Counts V and IX and the KAAD retaliatory harassment claim in Count IX; and **denied** with respect to the Title VII retaliatory harassment claim in Count V.

**IT IS SO ORDERED.**

Dated: July 5, 2022

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE